**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| EARL KELLY PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 09-CV-2010 |
| | ) | |
| CHICAGO PUBLIC SCHOOLS and | ) | Judge Robert M. Dow, Jr., |
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Earl Kelly Prince has sued Defendants Chicago Public Schools and Chicago Board of Education for due process violations in connection with his pre-suspension and subsequent dismissal hearings. Specifically, Plaintiff challenges the notice of the hearings. For the reasons set forth below, the Court grants Defendants' motion for summary judgment [125].

**I.      Background**

Plaintiff Earl Kelly Prince ("Plaintiff" or "Prince") is a former Chicago public school teacher. Plaintiff challenged the traditional, federal court discovery process for nearly a year after he filed his complaint (see Docket Entries 21-63), leading to a number of disputes that were referred to Magistrate Judge Mason for resolution. Now, at the summary judgment phase, Plaintiff persists in doing things on his own terms, frequently without regard for the federal rules. Defendants' motion for summary judgment has been pending since November 2010. Plaintiff sought, and was granted, three extensions of time in which to file his documents in opposition to Defendants' motion for summary judgment. Although Plaintiff filed a response brief, a response to Defendants' statement of facts, "objections," a motion to strike, and a motion for judicial

notice in response to Defendants' summary judgment papers, he did not file a statement of additional facts, as required by Local Rule ("L.R.") 56.1(b)(3)(C), despite multiple opportunities to do so. In fact, to clarify the record, on June 9, 2011, Defendants moved for an order advising Plaintiff of his failure to file his LR 56.1(b)(3)(C) statement of additional facts. See Docket Entry 150. This was in addition to the notice to *pro se* litigant opposing summary judgment [133] that Defendants had previously filed, which explicitly laid out Plaintiff's obligations under the federal and local rules. In an abundance of caution and wishing to give Plaintiff every opportunity to comply with the applicable rules, the Court granted the motion to clarify and extended the time for Plaintiff to file his statement of additional facts to July 1, 2011. Despite the notice to *pro se* litigant, three extensions of time, and a second opportunity from the Court to file facts statements, Plaintiff did not file a statement in support of his claims, arguments, denials, or averments.

The Seventh Circuit repeatedly has held that a district court is within its discretion to enforce compliance with its local rules regarding summary judgment motions and the Court will do so here. See *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). At the time that Defendants filed summary judgment, this case had been pending for approximately a year and a half, and Plaintiff received three extensions of time to respond. Plaintiff undoubtedly has substantial familiarity with the facts and circumstances of this case, as he has filed numerous documents setting forth his "assertions" about the case. At the summary judgment stage, the Court cannot merely take Plaintiff at his word that his factual assertions are true and indisputable; rather, he must come forward with evidence in support of them. As our court of appeals has more colorfully put it, "summary judgment is the 'put up or shut up' moment in a

lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events*." Koszola v. Board of Educ. of City of* Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004).

Merely including facts in a responsive memorandum is insufficient to put the issue before the Court. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 594 (N.D. Ill. 2000). Plaintiff's memoranda are replete with references to facts that are not properly before the Court because he failed to follow the Court's admonitions. As the Seventh Circuit has stressed, facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 2010 WL 4942161, at *7 (N.D. Ill. Dec. 8, 2010) (citing *DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to determine whether there is sufficient evidence to support a party's claim. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006). Adherence to Local Rule 56.1 gives the opposing party the opportunity to either admit or deny the statement of fact, and to provide record support for either assertion. By not following the rule, a party injects facts into the case that have not been subject to the opposing side's scrutiny, nor properly presented to the court for its review.

The Court has given *pro se* Plaintiff much leeway in this litigation, and has (as it must) construed his filings liberally. That said, *pro se* litigants are not "free to ignore procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Nor are *pro se* litigants free to ignore Federal Rule of Civil Procedure 56, which requires assertions of fact to be supported by evidence. Fed. R. Civ. P. 56(c). Plaintiff was notified that if he failed to file a

statement of additional facts, or present admissible evidence (by way of documents or declarations) in support of his responses to Defendants' fact statements, "the judge will be forced to assume that you do not dispute the facts which you have not responded to." Thus, even though Plaintiff disputes the majority of facts presented in this case, his disregard for the rules requires the Court to accept the majority of Defendants' facts.

Based on the foregoing, the Court has taken the relevant facts primarily from Defendants' Local Rule ("L.R.") 56.1 statements ("CPS SOF") [127]. To the extent that Plaintiff has complied with the rules in responding to Defendants' statement of facts, the Court will consider Plaintiff's evidence and argument in the light most favorable to him.

### A.    Plaintiff's Motion to Strike

Plaintiff filed a motion to strike Exhibits 3, 4, 5, 7a, 7b, 8a, 8b, 9, 13, 15, 16, 17, 18, 21, 22, 24, 25, 27, and 30, filed in support of the Board's motion for summary judgment. A party who wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id*. at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)). Indeed, it is the function of the Court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing &*

*Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). The Court is capable of redacting the statement of facts and disregarding all argumentative headings, interpretation or analysis of the facts, or unfounded assertions of fact found in the statement. The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.[1]

Although the Court need not rule on the particulars of Plaintiff's motion to strike because any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendants' motions for summary judgment, most of Defendants' assertions comply with Local Rule 56.1. Additionally, in response to Plaintiff's motion to strike, the Board laid a foundation for and authenticated Exhibits 4-10, 13-20, 25-26, and 31 as copies of government records kept in the ordinary course of business through the declaration of Cheryl Colston, Director of Employee Relations for the Board. The Board also laid a foundation for Exhibits 3, 11-12, 21-24, and 27 under Federal Rule of Evidence 901(b)(1) through the declaration of Ed Wong, a labor attorney for the Board. These declarations, although arguably unnecessary at summary judgment, remove any doubt as to whether the Court may consider the fact statements at issue.

---

[1] For example, testimony must be based on personal knowledge. See, *e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient."); Fed. R. Civ. P. 56(e). In addition, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. For example, a deposition transcript usually is not admissible at trial but (obviously) may be used in support of summary judgment; however, a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition. See *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions * * * are admissible in summary judgment proceedings to establish the truth of what is attested or deposed").

Consistent with the discussion above, the Court denies Plaintiff's motion to strike [145]. And consistent with its obligations under the federal and local rules, the Court will rely only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage. See Fed. R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007). In addition, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. Any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on the summary judgment motion.

**B.** **Facts**

Plaintiff Earl Kelly Prince is a former teacher with the Chicago Board of Education ("the Board"). Plaintiff took a leave of absence from Chicago Public Schools in September 1980, to serve at the Chicago Teachers Union, where he served until September 2004. After Prince returned to teach at CPS in September 2004, he continued to serve as a union delegate at Lavizzo Elementary School. The Illinois State Board of Education ("ISBE") is the state educational agency charged with conducting hearings on the dismissal of tenured teachers for cause, pursuant to the Illinois School Code, 105 ILCS 5/34-85.[2] The due process rights and termination procedures to which tenured teachers are entitled are set forth in the School Code, as well as the collective bargaining agreement between the Chicago Teachers Union and the Board. Plaintiff maintains that the Board violated his due process rights and conspired to deny his due process

---

[2] ISBE is not a named party.

rights in connection with his removal as a tenured teacher to prevent him from launching a bid for the presidency of the Chicago Teachers Union.

In December 2005, January 2006, and February 2006, evaluations of Plaintiff's performance as a fifth grade teacher at Lavizzo Elementary school indicated that he had consistent weaknesses in the classroom. In particular, the evaluations noted that students were not paying attention, student work was not displayed, there was minimal to no classroom management, and his classroom was cluttered.[3] On March 22, 2006, following these observations, Principal Arnold Bickham issued Plaintiff an E-3 Notice, indicating that his service as a tenured teacher at the present time was unsatisfactory. Plaintiff received and signed the notice on March 22, 2006.

As a result of the unsatisfactory evaluation, and as required by 105 ILCS 5/24A-5(g) and agreed under Article 39-7-2 of the Chicago Teachers Union Agreement, Candace Naddy was selected to serve as a consulting teacher to assist Plaintiff in remediating his identified teaching deficiencies. On March 23, 2006, Plaintiff, Naddy, and the Principal met to discuss the contents of a ninety-day remediation plan under which Plaintiff was to correct the identified deficiencies. On March 30, 2006, Plaintiff signed a remediation plan—to start April 5, 2006—outlining measures to improve his performance. The consulting teacher's log indicates that she visited Prince's classroom a total of fifty-seven times between April and December 2006, at which time Naddy wrote her observations and recommendations for improvement. On April 26, May 19, September 29, October 26, November 22, and December 12, 2006, Principal Bickham observed Plaintiff in the classroom. After these observations, on December 19, 2006, he issued a final rating indicating that Plaintiff had failed to satisfactorily complete the remediation plan.

---

[3] The evaluations said that identified his "room in shambles" and "pandemonium in class."

On March 2, 2007, the Board approved dismissal charges against Plaintiff and sent Plaintiff a notice of pre-suspension hearing at his address of 10004 South Union, Chicago Illinois, 60628. A pre-suspension hearing typically involves the law department reading the charges and specifications, and the response from the tenured teacher is to demand a state hearing. The Board letter stated that the CEO was considering a recommendation to terminate Plaintiff's employment in the Chicago Public Schools and included a copy of the proposed charges. Plaintiff was notified that the hearing would take place on March 13, 2007 at 10:30 a.m. He also was notified by letter dated March 2 that a dismissal hearing had been tentatively scheduled for March 22, 2007. The letter stated that although the hearing had been scheduled, Plaintiff would be dismissed from his employment and no hearing held unless, within 10 days after receiving the notice, he requested in writing of the CEO that a dismissal hearing be scheduled on the charges. The letter directed Plaintiff where to submit his written communications.

On March 9, 2007, Plaintiff's attorney asked to reschedule the pre-suspension hearing by two weeks (after March 27, 2007).[4] He also sent a letter requesting a dismissal hearing and asking that it be held after the pre-suspension hearing. He did not seek another date for the dismissal hearing because he felt that his request on March 9 was all that he was required to do. On March 13, the Board agreed to the first rescheduling of Prince's pre-suspension hearing, and moved it from March 13 to March 19. On March 19, Prince again moved to reschedule the hearing set for March 19, and on March 20, the Board agreed. Cheryl Colston sent Plaintiff's counsel a letter on March 20, indicating that the hearing had been rescheduled to March 27, 2007, at 2:00 p.m. On March 24, Plaintiff sent a fax to the Board stating that he was hospitalized

---

[4]  Plaintiff retained John Ricci as legal counsel to represent him at the pre-suspension and dismissal proceedings on or about March 9, 2007, and Ricci ceased to represent Prince on March 27, 2007.

and would be hospitalized on March 27. The letter advised the Board to contact him at either at his phone number or at his 10004 S. Union address.

On March 27, 2007, the Board sent Prince a letter to confirm that Prince had spoken with Tom Krieger and the Board had agreed to the third rescheduling of Prince's pre-suspension hearing and had reset the hearing for March 29, 2007, at 1:30 p.m. The Board notified Plaintiff that there would be no further continuances of the hearing and that Prince could send a representative if he was unable to appear in person. On March 29, Prince sent a fax to the Board confirming that he had spoken with Tom Krieger about the pre-suspension hearing and stating that Krieger had "knowingly and intentionally phoned disabled Prince and threatened him with suspension and other horrors" and that this action subjected him to severe emotional distress. Prince testified during his deposition that on March 29, 2007, he was not impaired mentally or verbally and could think clearly. Despite the three extensions, Prince did not appear at his pre-suspension hearing on March 29, 2007, and did not send a representative in his place. On April 2, 2007, following the pre-suspension hearing, the Board notified Prince that he was being suspended without pay, effective immediately. The Board sent Prince the notice via certified mail and advised Plaintiff to contact Tom Owens in the office of labor relations if he had any questions.

On April 10, 2007, counsel for the Board sent a notice to the Illinois State Board of Education to request a list of impartial hearing officers to serve as the hearing office in Plaintiff's dismissal hearing. On April 11, the State Board provided the Board and Plaintiff's counsel with a list of five prospective hearing officers to serve in Prince's dismissal hearing. The State Board was advised that Prince was no longer represented by counsel. On April 17, 2007, the State Board again sent Prince a list of five prospective hearing officers and advised Prince that the

parties had seven days to select the hearing officer. The Board further advised Prince that the "refusal to participate in the striking process allows the Chicago Board to ultimately choose the hearing officer in this case." On May 1, 2007, the Board sent a letter to the State Board, with a copy to Prince, noting that Prince had failed to participate in the selection process and selecting Robert Perkovich as the hearing officer. On May 2, the State Board appointed Perkovich as the hearing officer in Prince's dismissal hearing. The State Board sent a copy of the appointment to Prince and the Board, and also sent Perkovich the notice of charges as well as the rules governing the dismissal of tenured teachers, with a copy to Prince and the Board.

According to the findings of fact and recommendation of Hearing Officer Perkovich, on May 8, 2007, he offered the parties a date for the hearing, but only the Board responded to the offer, asking for additional proposed dates. It wasn't until March 17, 2009, that the hearing officer offered another date. Again, only the Board responded. Pursuant to a notice of hearing issue by Perkovich on April 20, 2009, the matter was set for hearing on July 22, 2009. Prior to Perkovich setting the hearing date, Prince filed the present lawsuit on April 1, 2009. The dismissal hearing then was held on July 22, 2009, but Prince failed to appear. On August 19, 2009, the hearing officer recommended that Prince be dismissed from service.

On August 19, 2009, the State Board sent Prince a copy of the hearing officer's recommendation via certified mail. On October 3, 3009, the certified letter remained unclaimed and was returned to sender. On August 28, 2009, the Board notified Prince that it had received the hearing officer's recommendations, and that Prince could submit exceptions in opposition to the Board's adoption of the recommendations by submitting a memorandum of law in opposition by September 11, 2009. The Board noted that failure to raise factual or legal arguments before the Board would constitute waiver of those arguments. During his deposition, Prince testified

that he received the letter from the Board approximately one week after it was sent. On September 25, 2009, the Board sent Prince a notice, via certified mail, that the Board had approved the recommendation to terminate Prince and advising Prince that he had the right to seek judicial review by filing a complaint in the Circuit Court of Cook County within 35 days of the date of the letter. Prince testified that he received the letter within a week of its mailing date. Prince did not seek judicial review of his termination in Circuit Court.

## II.     Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, Plaintiff must demonstrate that (1) he had a constitutionally protected property interest, and (2) he was deprived of that interest without due process. *Kim Constr. Co., Inc. v. Board of Trustees of Village of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994). Plaintiff contends that he has a property interest in his job as a teacher with the City of Chicago, and that the City violated his due process rights by failing to provide him with meaningful pre-termination process. Specifically, Plaintiff alleges that he was disabled when the pre-suspension hearing was scheduled, that he was not given three days notice for the hearing, and that the Board knew that he was "medically unavailable" on the date in question, but nonetheless carried on with the hearing.[5] He also claims that he did not receive adequate notice for the pre-suspension and dismissal proceedings, an assertion which, as demonstrated in the factual background and below, is belied by the record before the Court.

It is undisputed that Plaintiff, as a tenured teacher, had a legally protected interest in continued employment with CPS. See *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001).

---

[5] In December, 2005, January, 2006, and again in February, 2006, after Prince's evaluations indicated consistent teaching weaknesses in the classroom, Prince and the Board participated in a 90-day remediation attempt. Plaintiff has not challenged the 90-day teaching remediation process, his consulting teacher's input, her recommendations for improvement, or the substance of the determination that he was deficient as a teacher.

Therefore, the only question is whether Plaintiff received adequate process.[6]  With respect to pre-termination process, the Supreme Court and the Seventh Circuit have stated that "due process 'requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'"  *Bodenstab v. County of Cook*, 569 F.3d 651, 663 (7th Cir. 2009) (quoting *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985)).  The scope of that right to pre-termination process varies based on the adequacy of post-termination remedies.  *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 536 (7th Cir. 2008).  Where "adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'"  *Id.* at 536-37 (quoting *Loudermill,* 470 U.S. at 542); see also *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990) ("Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a [person].").

The Board's Employee Discipline and Due Process Policy states that before a teacher is suspended, the teacher must be given a pre-suspension hearing, held at the Office of Labor and

---

[6]  Plaintiff complains that the Board – and, in particular, Director Cheryl Colston – did not comply with various procedural requirements prior to his dismissal.  But a "procedure required by contract, statute, or regulation does not create a constitutionally protected right nor does violation of a contract, statute, or regulation, by itself, constitute a violation of due process."  *Fenje v. Feld*, 301 F. Supp. 2d 781, 802 (N.D. Ill. 2003) (collecting cases).  As the Seventh Circuit explained in *Campbell v. City of Champaign*:

> "When the claimed deprivation of property is the loss of a job, the entitlement must be to a job, rather than just to a set of disciplinary procedures. '[A] contract that creates merely a right to procedure does not create a property right within the meaning of the due process clause.' So even if the contract in this case be construed as *entitling* the plaintiff to progressive discipline, the breach would not be a deprivation of *property.*"

940 F.2d 1111, 1113 (7th Cir. 1991) (citation omitted).  In short, even if the Board failed to follow certain procedures, that failure does not automatically constitute a due process violation.

Employee Relations (not at the school level), at which he is informed of the proposed charges, provided with an explanation of the basis of the charges, and afforded an opportunity to respond and present his explanation of the applicable facts and circumstances.[7] This policy provides tenured teachers with all the process that is due prior to an employment deprivation. See *Loudermill,* 470 U.S. at 546 (in pre-deprivation hearing, "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story").

Plaintiff was provided with this opportunity, but he failed to take advantage of it. Prince sought—and was granted—three extensions for his pre-suspension hearing. Although the three extensions given were not the dates that Prince or his attorney selected, there is no requirement that the date be agreeable to an employee, particularly where the employee is permitted to send a representative in his place. Additionally, the pre-suspension hearing typically consists only of the charges being read and the teacher asking for a full ISBE hearing, which Prince through his attorney had already requested. In the event that Prince wanted to make a statement at the hearing but was unable to attend in person, he could have sent someone to appear in his place. (Indeed, given that earlier in the month Prince had communicated his position to the Board

---

[7]  In his materials, Plaintiff repeatedly refers to the standards for pre-discipline hearings, which occur at the school level and which are governed by different policies from the discharge procedures. Specifically, Plaintiff repeatedly asserts that Defendants failed to give him three days notice for his pre-suspension hearing. Defendants have presented evidence that the Board has a rule requiring three days notice for pre-discipline hearings, not pre-suspension hearings for un-remediated tenured teachers. Rather than acknowledging (and trying to counter) the evidence presented by Defendants, Plaintiff continues to assert, without evidentiary support, that three days notice is required for pre-suspension hearings. Based on the record before the Court, it simply is not. In any event, Plaintiff received three extensions of time, in the Board's discretion, for his pre-suspension hearing, and also was given the option of having a representative appear on his behalf, yet he still failed to appear. See also *Panozzo v. Rhoads*, 905 F.2d 135, 139 (7th Cir. 1990) (written notice received the night before the hearing was constitutionally sufficient). The Board did not suspend him without pay until after the hearing, and thus it certainly was within the Board's discretion to refuse additional extensions of time (after giving him from March 2 until March 29), cognizant of the fact that Plaintiff was being paid up through the pre-suspension hearing. Were the rule otherwise, an employee could ensure an extra month or two of pay simply by insisting on repeated continuances of the pre-suspension hearing.

through his attorney, the Board may well have expected counsel to appear on Prince's behalf at the scheduled March 29 hearing.)  Tellingly, Prince was able to compose and type (or have typed), and sign and send (or have sent) his letter to the Board dated March 29, 2007, in protest of the pre-suspension hearing, but he elected not to avail himself of the opportunity to send someone to appear on his behalf on that same date.

The Seventh Circuit repeatedly has held that an employee waives the right to a pre-termination hearing when an employer offers a hearing which the employee fails to accept. See, *e.g., Flynn v. Sandahl,* 58 F.3d 283, 288 (7th Cir. 1995) ("Employee cannot claim lack of due process when his employer offered him such a pre-termination hearing and he refused to attend."); *Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana,* 42 F.3d 403, 413-14 (7th Cir. 1994) (finding that employee waived right to a pre-termination hearing by failing to accept an earlier offer for such a hearing); *Fern v. Thorp Public School,* 532 F.2d 1120, 1131-32 (7th Cir. 1976) (holding that school teacher facing termination for cause waived claim of procedural due process violation when he knew the time, place and purpose of the pre-termination hearing but chose not to attend after conferring with his counsel).  Here, it is clear that the Board afforded Prince the opportunity to participate in the pre-suspension hearing either in person or through proxy, but that Prince elected not to.  The essential requirements of due process are notice and an *opportunity* to be heard.  See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis added).  Having declined to attend in person or through a representative, notwithstanding the three continuances of the pre-suspension hearing that the Board allowed, Prince had the opportunity to be heard but abstained, thereby waiving his right to challenge the process in federal court.

Even more detrimental to his federal claims, Plaintiff also failed to participate in the much more elaborate dismissal hearing scheduled by the Board following his pre-suspension hearing.[8]  On March 2, 2007, the Board notified Prince that his dismissal hearing tentatively had been set for March 22, 2007.  On March 9, 2007, Prince's attorney asked to reschedule the dismissal hearing, but he did not suggest a new or alternative date.  Subsequent to his attorney's request to reschedule the dismissal hearing, Prince at no time sought another date for his dismissal hearing, because, as he testified in his deposition, he "didn't need to do anything."

On April 10, 2007, counsel for the Board sent Illinois State Board of Education ("ISBE") a notice requesting a list of impartial hearing officers.[9]  On April 11, 2007, ISBE provided the Board and Prince a list of five prospective hearing officers to serve in Prince's dismissal hearing pursuant to Article 34 of the School Code and 23 Ill. Adm. Code 51.  One week later, on April 17, 2007, the ISBE again sent Prince a list of five prospective hearing officers to serve in Prince's dismissal hearing, and advised Prince that the parties had seven days to select the hearing officer, and that the Board could select the hearing officer unilaterally if Prince did not participate.  Prince did not respond.  On May 1, 2007, the Board sent a letter to ISBE, with a

---

[8]  A dismissal hearing under the Illinois School Code substantially resembles a civil trial. The hearing traditionally is conducted by an impartial hearing officer selected through a procedure designed to ensure his disinterestedness.  However, in the present case, Prince failed to respond to requests that he participate in the selection process.  The school superintendent bringing the dismissal charge is represented by attorneys who present documentary and testimonial evidence to support the charge. The teacher has the right to be present at the hearing with counsel, to present defenses to the charges, to offer his own evidence and witnesses, and to cross-examine the superintendent's witnesses. The hearing officer is empowered to issue subpoenas to require the attendance of witnesses upon the request of the superintendent or the teacher. Testimony is taken under oath, and the hearing is transcribed. After the hearing has concluded, the hearing officer must issue a report detailing his findings of fact and his recommendation to the school superintendent. *See* 105 Ill. Comp. Stat. Ann. 5/34-85 et seq.

[9]  The ISBE is a separate state educational agency authorized and required to administer hearings of dismissal of tenured teachers pursuant to 23 Ill. Adm. Code § 226.675.

copy to Prince, noting that Prince had failed to participate in the selection process, and selecting Robert Perkovitz as the hearing officer.

On July 22, 2009, a hearing was held before Hearing Officer Perkovich on the dismissal charges preferred against Prince. Prince did not appear at his dismissal hearing nor at any time did a representative enter an appearance on his behalf. In his order, Perkovich noted that on May 8, 2007, he offered a potential hearing date but only the Board responded to the offer, asking for additional proposed dates for hearing. The hearing officer offered another date of March 17, 2009.[10] Again, only the Board responded. At the conclusion of the hearing, the hearing officer determined that no further remediation was warranted and that Prince's dismissal was warranted. On August 19, 2009, the hearing officer formally recommended that Prince be dismissed from service.

On September 4, 2009, the ISBE sent Prince a copy of the dismissal recommendation to his Union Street address via certified mail. On October 3, 2009, the certified mail remained unclaimed and was returned to sender. On August 28, 2009, the Board sent Prince a notice that the Board had received the hearing officer's recommendations, and that Prince could submit exceptions in opposition to the Board's adoption of the recommendations by submitting a memorandum of law in opposition by September 11, 2009, instructing Prince that "[t]he failure of a party to raise factual or legal arguments before the Board shall constitute a waiver of those arguments." During his deposition, Prince admitted that he received the August 28, 2009 letter from the Board, approximately one week after it was sent. Following the August 28th

---

[10]  If Prince wanted to challenge the two-year delay in holding the dismissal hearing, he could have responded to any of the number of notices regarding the hearing that were sent to him—in respect to both the date of the hearing and the selection of the hearing officer—or, at a minimum, he could have sought judicial review of this decision by filing a complaint in the Circuit Court of Cook County. He did neither, nor does his complaint challenge the timing of the dismissal hearing. Instead, Plaintiff's claims have always centered on the notice he received for his pre-suspension hearing.

letter, on September 25, 2009, the Board again sent Prince a notice, via certified mail, stating that the Board had approved the recommendation to terminate Prince. The September 25 letter also advised Prince, "[y]ou have the right to seek judicial review of this decision under the Administrative Review Law, 735 ILCS 5/3-101 et seq. by filing a compliant in the Circuit Court of Cook County within 35 days of this letter."

Prince testified that he received the notice of termination of September 25, 2009, approximately one week after it was sent. Prince also testified that did not seek judicial review of his termination by filing a complaint in the Circuit Court of Cook County within 35 days of September 25, 2009, or at any other time because he believed the Board had "no authority to do anything." Again, Prince simply is wrong. If he wished to challenge the substance or outcome of his termination proceedings, he should have done so through the teacher dismissal review procedures set forth in the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq*. In part, the Administrative Review Law requires all dismissed teachers who seek to challenge the Board's dismissal to file a complaint for administrative review with the Cook County Circuit Court within 35 days of the date of notice of such decision. *Id*. There exists no authority that allows public employees to proceed in federal court on a claim that the employee clearly waived under the State Administrative Review Act, particularly under these circumstances, where Plaintiff was provided with two pre-termination hearings and given sufficient notice of his post-termination options.

Plaintiff appears to have taken the view that once the Board proceeded with the March 29, 2007 pre-suspension hearing in the absence of Plaintiff or his representative, the Board lacked authority to take any further action against him. Unfortunately for Plaintiff, that position is fundamentally mistaken. Having failed to (1) attend the pre-suspension hearing (which was

extended three times), (2) participate in any of the proceedings leading up to his dismissal hearing, and (3) seek administrative review of the termination decision, Plaintiff has waived his right to challenge the due process afforded him. The due process clause of the Fourteenth Amendment does not make the denial of a liberty interest actionable; it only makes the denial of a liberty interest *without due process* actionable. *Draghi v. County of Cook*, 184 F.3d 689 (7th Cir.) (1999). Simply put, Plaintiff "cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him." *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1367 (7th Cir. 1974) (granting summary judgment in favor of the defendants on the due process claim). Where, as here, a plaintiff refuses to attend the pre-suspension despite three continuances of the hearing date (all at Plaintiff's request),,subsequently disregards all proceedings in connection with the termination hearing, and thereafter fails to seek administrative review within the time for doing so, he cannot proceed in federal court in the hope that a different forum will produce a better outcome.

Plaintiff received notice of both hearings and the opportunity to participate. Had he chosen to participate in the termination hearing, he could have had counsel present, could have cross-examined witnesses, and could have presented witnesses in his defense. However, he chose not to appear at either hearing. Furthermore, if he had a problem with the dates on which the hearings were set or felt that the Board abused its discretion in declining to grant a fourth continuance of the pre-suspension hearing, he could have appealed the process in the Circuit Court. He failed to do this as well. In *Strasburger v. Board of Educ., Hardin County Comm. Unit Sch. Dist. No. 1,* 143 F.3d 351 (7th Cir.1998), the Seventh Circuit held that in order to charge a school board with a "random and unauthorized" employment termination, a plaintiff must demonstrate that state post-deprivation remedies are constitutionally inadequate. *Id.* at 358

(citing *Parratt v. Taylor,* 451 U.S. 527, 540-41 (1981)).  Like the Plaintiff in *Strasburger*, Prince has not alleged that Illinois post-deprivation remedies are inadequate, nor can he—under the Illinois School Code, a teacher who is dismissed may seek judicial review of the hearing officer's findings under Illinois' Administrative Review Law.  See 105 Ill. Comp. Stat. Ann. 5/34-85 *et seq.*  In light of the post-termination protections afforded to employees such as Prince, Defendants were required to provide only "truncated" pre-termination process consisting of "'oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.'"  *Michalowicz*, 528 F.3d at 537 (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)).  Defendants provided those opportunities. Since Prince failed to take advantage of the pre-termination opportunities provided to him, and since he cannot allege that his post-deprivation remedies (which he also failed to take advantage of) are inadequate, Plaintiff's federal due process property interest claim and his conspiracy to violate due process claim are dismissed.

### III.   Conclusion

For the reasons explained above, the Court grants Defendants' motion for summary judgment [125].  The Court denies Plaintiff's objections and motion to strike evidence proferred by Defendants [144], denies Plaintiff's motion to strike Defendants' statement of facts [145], and denies Plaintiff's motion for judicial notice [147].[11]  Also, in view of the Court's ruling on Defendants' motion for summary judgment, Plaintiff's motion for a declaratory judgment to

---

[11]  Plaintiff's motion for judicial notice asks the Court to take judicial notice of facts which have been refuted by Defendants—specifically, Plaintiff's repeated assertions that he needed to be given three days notice prior to his pre-suspension hearing.  See *supra* fn.7.

determine the validity of Chicago Board of Education Order suspending and terminating Plaintiff [155] is denied.[12]  Judgment is entered in favor of Defendants and against Plaintiff.

Dated:  August 25, 2011                    _____
                                           Robert M. Dow, Jr.
                                           United States District Judge

---

[12]   In his motion for declaratory judgment [155] and amended affidavit in support of his motion for declaratory judgment [159], Plaintiff asks the Court to declare that the (multiple) notices regarding his pre-suspension hearing violated his due process and First Amendment rights.  Plaintiff's complaint does not state a claim for a violation of his First Amendment rights (nor does the record presented give rise to a claim), and his due process allegations have been addressed in detail in this opinion.  Therefore, his motion for a declaratory judgment is denied.